**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| V.R., | Civil Action: 2:23-cv-20605 |
|---|---|
| Plaintiff, | |
| v. | |
| BERGEN COUNTY PROSECUTOR'S OFFICE; CRESSKILL PUBLIC SCHOOLS; and BOROUGH OF CRESSKILL, | |
| Defendants. | |

**BRIEF IN SUPPORT OF CRESSKILL PUBLIC SCHOOLS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT DUE TO FAILURE TO STATE A CLAIM**

**McGIVNEY, KLUGER, CLARK & INTOCCIA, P.C.**
*Attorney for Defendant, Cresskill Public Schools*
18 Columbia Turnpike, Suite 300
Florham Park, New Jersey 07932

**Of Counsel and on the Brief:**
Gary J. Intoccia, Esq.   (ID No. 021051991)
Emily R. Weisslitz, Esq.  (ID No. 023362007)
Anthony S. Pellegrino, Esq. (ID No. 407912022)

{F2769322-1}

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................3

PRELIMINARY STATEMENT ...........................................................4

STATEMENT OF FACTS.................................................................6

POINT I

      STANDARD OF REVIEW................................................9

POINT II

      PLAINTIFF'S CLAIMS ARE SUBJECT TO THE
      NEW JERSEY NOTICE OF CLAIM REQUIREMENTS....................12

POINT III

      THE DISTRICT DID NOT COMMIT A TITLE IX
      VIOLATION AT ANY RELEVANT POINT.............................18

POINT IV

      PLAINTIFF IS BARRED FROM BRINGING A
      CSAA CLAIM FOR ANY CONDUCT OCCURRING
      BEFORE DECEMBER 1, 2019

CONCLUSION ...........................................................................27

# TABLE OF AUTHORITIES

Caltavuturo v. City of Passaic, 124 N.J. Super. 361 (App. Div. 1973)..............................................................................14

Conley v. Gibson, 355 U.S. 41 (1957)..............................................9

Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629 (1999)...........*passim*

Doe v. Williamsport Area Sch. Dist., 2023 U.S. Dist. LEXIS 188445 (M.D. Pa. Oct. 19,2023)............................................................22

Frugis v. Bracigliano, 177 N.J. 250 (2003).......................................14

Gonzalez v. New Jersey, 2019 U.S. Dist. LEXIS 10689 (D.N.J. Jan. 23, 2019)..............................................................................18

Jerkins v. Anderson, 191 N.J. 285 (2007)....................................13,17

Kibler v. Roxbury Bd. of Educ., 392 N.J. Super. 45 (App. Div. 2007)..............................................................................14

L.E. v. Plainfield Pub. Sch. Dist., 456 N.J. Super. 336 (App. Div. 2018)...........................................................................14,16

Lockhart v. Willingboro High Sch., 2017 U.S. Dist. LEXIS 161993 (D.N.J.Sep. 29, 2017).............................................................24

Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992)..............................11

L.W. ex rel L.G. v. Toms River Reg'l Sch. Bd. of Educ., 189 N.J. 381 (2007)..............................................................................14

M.H. v. C.M., 2020 U.S. Dist. LEXIS 199534 (D.N.J. Oct. 27, 2020)..............................................................................22

M.W. v. Shikellamy Sch. Dist., No. 2022 U.S. Dist. LEXIS 27319 (M.D. Pa. Feb. 15, 2022).........................................................22

Patterson v. Novartis Pharm. Corp., 451 Fed. Appx. 495 (6th Cir. Aug 23, 2011).................................................................9,10

Tafuto v. N.J. Inst. of Tech., 2012 U.S. Dist. LEXIS 52623 (D.N.J. Apr. 12,2012)....................................................................22

S.M. v. Tamaqua Area Sch. Dist., 2023 U.S. Dist. LEXIS 35298 (M.D. Pa. Mar. 2, 2023) ........................................................................................23

Walters v. Carson, No. 11-6545, 2012 WL 6595732 (D.N.J. Dec. 17, 2012) ..................................................................................................................9

W.S. v. Hildreth, 252 N.J. 506(2023) ............................................................15

Zelnick v. Morristown-Beard Sch., 445 N.J. Super. 250 (Law. Div.2015) ........................................................................................................18

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(a)
Fed. R. Civ. P. 12(b)(6)

**United States Code**

20 U.S.C. § 1681-§1688
20 U.S.C. § 1681(a)

**New Jersey Statutes**

N.J.S.A. § 59:8-8
N.J.S.A. § 59:8-8(a)
N.J.S.A. § 9:17B-1(a)
N.J.S.A. § 59:8-1
N.J.S.A. § 59:8-3
N.J.S.A. § 59:8-3(b)
N.J.S.A. § 2A:61B-1
N.J.S.A. § 2A:30B-2

## PRELIMINARY STATEMENT

Plaintiff, V.R., has brought the within action before the United States District Court, District of New Jersey. Plaintiff's Amended Complaint alleges that Defendant Cresskill Public Schools (hereinafter referred to as the "District Defendant") failed to take the appropriate action or report to the police the allegations made by Victor and Divna Rosasco, parents of V.R., who was then a minor, that their daughter was being groomed and sexually abused by an adult man named Nicolas Coirazza, who neither resided in the Borough of Cresskill nor attended the District's schools at any point.

Plaintiff's Amended Complaint also makes additional claims the Borough of Cresskill (hereinafter the "Borough Defendant") and the Bergen County Prosecutor's Office (hereinafter the "BCPO") which need not be discussed at length herein.

Plaintiff is claiming that in addition to the above referenced alleged sexual abuse, V.R., who was approximately 14 years of age during the relevant time period, was part of a "satanic cult" which covertly operated within Cresskill High School. It is further alleged that, as part of this cult, V.R. and the other members of the cult would encourage each other and otherwise facilitate inappropriate relationships with older men, such as the relationship V.R. alleged she engaged in with Coirazza. It is not alleged that Coirazza was a student or former student of the

District, nor is it alleged that Coirazza ever once stepped foot on District property.   Moreover, Plaintiff's Amended Complaint does not allege that V.R. was forced or threatened into be a part of this "satanic cult," or that she was otherwise bullied, harassed, assaulted, or threatened by the other cult members. Conversely, Plaintiff's Amended Complaint alleges that she was an active and engaged participant in this ostensible cult.

Defendant District moves to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).   Plaintiff's Amended Complaint must be completely dismissed because Plaintiff failed to file a notice of claim within the appropriate time frame and because Plaintiff's Amended Complaint does not contain facts sufficient to create a cause of action under Title IX; and it must be partially dismissed because N.J.S.A. § 2A:61B-1 does not apply to any conduct occurring prior to December 1, 2019.

## <u>STATEMENT OF FACTS</u>

### I.  **Procedural History**

Plaintiff, Victor Rosasco, on behalf of his child, V.R., a minor, commenced this action via the initial Complaint, filed on or about September 22, 2023, before the United States District Court for the District of New Jersey, Docket No., 2:23-cv-20605. See Certification of Gary J. Intoccia, Esq., (hereinafter referred to as "Intoccia Cert."), "Exhibit A," Plaintiff's initial Complaint.  Service was effectuated upon the District Defendant on or about September 27, 2023.  See Intoccia Cert., "Exhibit B," Affidavit of Service.

The District Defendant filed an application with the Court on October 16, 2023, requesting an extension of its time to answer, move, or otherwise respond to Plaintiff's initial Complaint to November 1, 2023.  See Intoccia Cert., "Exhibit C," Application for Extension of Time To Respond to November 1, 2023.

On October 19, 2023, the District Defendant filed a letter with the Court stating its intention to file a pre-Answer motion to dismiss Plaintiff's initial Complaint and requesting a pre-motion conference.  See Intoccia Cert., "Exhibit D," First Pre-Motion Conference Letter.  The Borough Defendant filed a similar letter.  The Court entered an Order on October 24, 2023, waiving the pre-motion conference requirement and granting the District

Defendant and Borough Defendant permission to file its respective motions to dismiss.

The District Defendant filed its pre-Answer motion to dismiss Plaintiff's initial Complaint on November 8, 2023. See Intoccia Cert., "Exhibit E," District Defendant's Initial Motion to Dismiss. The basis for the motion was, in addition to most of the contentions stated herein, that Plaintiff Victor Rosasco did not have standing to bring the action on behalf of his daughter, V.R., as she had turned eighteen years old prior to the filing of the Complaint and had not been adjudicated incompetent or otherwise unable to bring the instant action on her own behalf[1].

The Borough Defendant filed its motion for judgment on the pleadings seeking dismissal of Plaintiff's initial Complaint on October 24, 2023.  See Intoccia Cert., "Exhibit F," Borough Defendant's Initial Motion to Dismiss.  The Borough Defendant also principally raised the argument that Victor Rosasco did not have standing to bring the within action.

In lieu of a traditional opposition to the pending motions to dismiss, on November 20, 2023, Plaintiff filed an Amended Complaint. See Intoccia Cert., "Exhibit G," Plaintiff's Amended

---

[1] The Amended Complaint, as currently pled, seeks to protect the identity of V.R., a purported victim of sexual assault when she was a minor.  For these reasons, we are not disclosing her date of birth in this public court filing. However, upon review of Plaintiff's school records, it has been verified that V.R. was indeed eighteen (18) years old when the Complaint was filed.  It is not anticipated that Plaintiff will dispute this fact.

Complaint.  The Amended Complaint removed Victor Rosasco as a Plaintiff and in his place inserted V.R., individually, and added BCPO as a Defendant.  Additionally, the Amended Complaint added Count VI, which alleges a violation of N.J.S.A. § 2A:61B-1, also known as the New Jersey Child Sexual Abuse Act (hereinafter referred to as the "CSAA"), as well as minor changes to paragraphs 7, 13, and 62. Id. at ¶ 7, 13, and 62.  It is unknown why Count VI, nor the changes to the above paragraphs in the Amended Complaint, were not included in the initial Complaint.

On November 28, 2023, via a text Order, the Court administratively dismissed both the District Defendant and the Borough Defendant's motions to dismiss due to the filing of the Amended Complaint, in accordance with F.R.C.P. 15(a).  The parties then executed a stipulation extending its time to Answer until January 31, 2024.   See Intoccia Cert., "Exhibit H," Stipulation Extending Time to Answer.

On January 31, 2024, the District Defendant filed a letter with the Court stating its intention to renew its pre-Answer motion to dismiss as to Plaintiff's Amended Complaint.  See Intoccia Cert., "Exhibit I," Second Pre-Motion Conference Letter.  On the same date, the Borough Defendant filed a similar letter.  The Court filed a text Order on February 1, 2024, waiving the pre-motion conference and permitting the District Defendant to proceed with filing its F.R.C.P. 12(b)(6) motion.  Pursuant to Your Honor's

part rules, the District Defendant was given an additional seven (7) days from the date of the Court's February 1, 2024, text Order to file its motion to dismiss.

## II.  Factual Allegations

Plaintiff's Amended Complaint seeks compensatory damages for the District Defendant's alleged negligent and Title IX-violating conduct, which Plaintiff's Amended Complaint alleges resulted in the continued sexual abuse of V.R. by an adult man named Nicolas Coirazza.  See "Exhibit G," ¶¶ 126-127, 142-144.

Plaintiff's Amended Complaint alleges that V.R. and her peer group, all students of the District Defendant, created a "satanic cult" which was so prominent that the District Defendant knew or should have known of its existence.  Id. at ¶ 60.  Plaintiff's Amended Complaint further alleges that, while on District premises, she and her peers encouraged one another to participate in inappropriate sexual relationships with older men, such as V.R.'s alleged relationship with Coirazza.  Id. at ¶ 125.

Plaintiff's Amended Complaint also claims that V.R.'s late mother, Divna Rosasco, notified District Defendant officials of the inappropriate relationship between V.R. and Coirazza.  Id. at ¶ 54.

Plaintiff's Amended Complaint argues that the District Defendant's failure to report the alleged sexual abuse of V.R. to

the proper authorities, or to otherwise take action to protect V.R., resulted in a violation of Title IX of the Civil Rights Act, 20 U.S.C. ch. 38 § 1681 et seq. <u>Id</u>. at ¶ 129. Plaintiff's Amended Complaint also argues that the District Defendant's failure to report the alleged abuse was negligent. <u>Id</u>. at ¶ 144.

**LEGAL ARGUMENT**

**POINT I**

**STANDARD OF REVIEW**

A motion to dismiss a complaint for failure to state a claim must be granted if it appears from the face of the complaint that the plaintiff can establish no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The facts must be taken as true and reviewed in the light most favorable to plaintiff. Ibid. While a court analyzing a Rule 12(b)(6) motion should accept as true all well-plead factual allegations and draw all reasonable inferences in Plaintiffs' favor, courts should disregard allegations that "are no more than conclusions," as they are not "entitled to the assumption of truth." Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). For the reasons stated herein, Plaintiff's Amended Complaint fails to allege facts sufficient to hold the District Defendant liable under any of the causes of action alleged in Plaintiff's Amended Complaint.

Furthermore, any argument that the deficient pleadings should be cured by way of amended pleadings and/or discovery is erroneous. "The Supreme Court's respective decisions in Twombly and Iqbal do not permit a plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint." Patterson v. Novartis Pharm. Corp., 451 Fed. Appx. 495, 498 (6th Cir. 2011).

## POINT II

### PLAINTIFF'S CLAIMS ARE SUBJECT TO NEW JERSEY NOTICE OF CLAIM REQUIREMENTS

Effective December 1, 2019, N.J.S.A. § 59:8-3(b), holds that the notice of claim requirements applicable to public entities, articulated in N.J.S.A. § 59:8-1 et seq., do not apply to:

> [A]n action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L. 1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1).

Under § 59:8-8(a), a claimant has 90 days to file a notice of claim against a public entity after the accrual of a cause of action. However, a minor need not file a notice of claim until after reaching the age of majority. N.J.S.A. § 59:8-8. Upon reaching the age of majority, a claimant has 90 days from their eighteenth birthday to file a notice of claim. Estate of Dunmore v. Pleasantville Bd. of Educ., 470 N.J. Super. 382, 388 (App. Div. 2022).

A claimant who fails to file a notice of claim within 90 days of their N.J.S.A. § 59:8-8 deadline has one (1) year to move before the Superior Court of New Jersey for permission to file a late notice of claim. N.J.S.A. § 59:8-9. The claimant must also submit an affidavit showing sufficient reasons constituting extraordinary circumstances for their failure to timely file a notice of claim. Ibid.

Here, Plaintiff's cause of action accrued upon reaching the age of majority on her eighteenth birthday. As discussed supra, it is undisputed that Plaintiff reached the age of majority prior to the filing of the initial Complaint, on September 22, 2023. 90 days from September 22, 2023, was December 21, 2023. As such, Plaintiff's deadline to file a timely notice of claim expired some time prior to December 21, 2023. In order to proceed with the instant action against the District Defendant, a public entity, Plaintiff must move before the Superior Court of New Jersey for permission to file a late notice of claim.

Such a motion for a late notice of claim is not guaranteed to be granted, however. Plaintiff received explicit notice of her failure to file a notice of claim via both pre-motion conference letters filed by the Borough Defendant and the District Defendant. These letters were filed with the Court on October 17, 2023, and October 19, 2023, respectively. Upon information and belief, these dates were filed with the Court and electronically served upon Plaintiff within 90 days of her eighteenth birthday. As such, Plaintiff effectively acknowledged and denied the opportunity to file a timely notice of claim against the District Defendant. In light of such a blatant disregard for the prerequisites to bringing a civil action against a public entity, it is unclear whether the Superior Court of New Jersey would be inclined to grant Plaintiff permission to file a late notice of claim.

Based upon the October 23, 2023, pre-motion conference letter filed by Plaintiff with the Court, Plaintiff appears to take the position that her claims against the District are subject to N.J.S.A. § 59:8-3(b)'s notice of claim waiver due to the mere fact that V.R. was the victim of child sexual abuse.  Plaintiff is ostensibly claiming that the District Defendant's degree of involvement in the commission of the sexual abuse of Plaintiff V.R. is irrelevant. However, the statute's language does not read as such.

The language of N.J.S.A. § 59:8-3(b) waives the notice of claim requirement for the following civil actions: actions at law for injuries resulting from the commission of sexual assault, any crime of a sexual nature, a prohibited sexual act, or sexual abuse. Plaintiff's civil action against the District Defendant does not arise from any of the above causes of action; it arises from the District Defendant's alleged failure to report the alleged abuse of Plaintiff to the proper authorities.  Plaintiff's claims against the District Defendant are not sexual abuse claims; they are better characterized as failure to report claims.  There is a distinct difference between the two causes of action.

Plaintiff's Amended Complaint fails to provide any basis upon which it could be determined that the District bore any responsibility for the alleged sexual abuse of V.R. or had a reasonable opportunity to prevent same from occurring.  The

District squarely had no involvement in the alleged sexual abuse of Plaintiff, committed by an adult man who had no relation whatsoever to the District Defendant.

New Jersey Courts have consistently held that school districts and its officials have a duty to supervise students within the district's care.  See Jerkins v. Anderson, 191 N.J. 285, 296, 922 A.2d 1279 (2007) (stating that "[s]chool officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty'") (quoting Caltavuturo v. City of Passaic, 124 N.J. Super. 361, 366, 307 A.2d 114 (App. Div. 1973) (alteration in original)); Frugis v. Bracigliano, 177 N.J. 250, 268-70, 2003) (stating school officials' duty of care "extends to supervisory care" of their students).  It has been recognized that "[t]eachers must at times be present to oversee students on school playgrounds and in hallways, classrooms, lunchrooms and auditoriums." Kibler v. Roxbury Bd. of Educ., 392 N.J. Super. 45, 55, 919 A.2d 878 (App. Div. 2007).

A school district's supervisory duty extends to "foreseeable dangers . . . [that] arise from the careless acts or intentional transgressions of others." Frugis, 177 N.J. at 268, 827 A.2d 1040; see also L.W. ex rel L.G. v. Toms River Reg'l Sch. Bd. of Educ., 189 N.J. 381, 406, 915 A.2d 535 (2007).  In L.W., the

Supreme Court of New Jersey applied the supervisory duty to a case of student-on-student harassment. 189 N.J. at 406-07.

In L.E. v. Plainfield Pub. Sch. Dist., 456 N.J. Super. 336, 348 (App. Div. 2018), the Superior Court of New Jersey, Appellate Division, concluded that a school district's personnels' supervisory responsibility over its students extends to the prevention of unwanted sexual encounters between district students.  The L.E. Court remarked that this was a case of first impression for the Court, and it had to rely on persuasive out-of-state decisions.  Ibid. The L.E. court ultimately determined that a school district could be liable for its negligent supervision of a district student who sexually assaulted another student.  Id. at 351.

Defendant is unaware of any New Jersey caselaw extending the doctrine of negligent supervision to persons who are not within the supervisory control of the school district.  Based upon the caselaw Plaintiff cites to in her October 23, 2023, letter to the Court, namely W.S. v. Hildreth, 252 N.J. 506 (2023), Plaintiff is unable to point to any New Jersey caselaw which may be interpreted to extend the Defendant's supervisory control to non-students or non-employees.

In W.S., a homeroom teacher at Myron L. Powell Elementary School sexually abused the plaintiff, then-aged approximately 11. Id. at 510.  Contrary to Plaintiff's assertion, W.S. bears no

relation whatsoever to the instant matter. In W.S., the plaintiff alleged that he was sexually assaulted on numerous occasions while on school property by a school employee. Id. at 512. The perpetrator in W.S. was a school district employee for whom the district was responsible for hiring, training, and supervising, and the abuse of the plaintiff occurred at a time when the district's duty *in loco parentis* was in effect.

Conversely, in the instant matter, Plaintiff's Amended Complaint alleges that she was in constant contact with perpetrator Nicolas Coirazza and "fell under his spell." See "Exhibit G," ¶¶ 53 and 140. Plaintiff's Amended Complaint appears to allege that V.R. would "sleep with" Coirazza, though little to no information is given regarding the specifics of same. Id. at ¶ 15. No time frame is given for when the two met, nor for when the alleged sexual abuse began. Upon information and belief, Coirazza was a resident of Lodi, New Jersey, at all times relevant hereto, and never attended any of the District Defendant's schools.

Plaintiff's Amended Complaint does not allege that Coirazza ever entered the grounds of any property owned by the District Defendant, nor that any of the alleged sexual abuse occurred on school grounds. It appears that the alleged sexual abuse of V.R. occurred entirely off-school premises, at a time when Plaintiff V.R. was outside the supervisory control of the District Defendant. Should Plaintiff attempt to claim negligent supervision because

V.R. received sexually explicit text messages from Coirazza while present on school premises, this argument fails as a matter of law as Plaintiff's Amended Complaint fails to prove that the District had any involvement in the apparent sexual abuse of V.R.  See, L.E., 456 N.J. at 347-48 (stating that a school district's supervisory duty extends only to foreseeable dangers and requires school officials to exercise ordinary prudence).

The closest Plaintiff's Amended Complaint comes to alleging that sexually inappropriate conduct occurred on the District Defendant's premises is Plaintiff's alleged participation in a "satanic cult" at Cresskill High School which also ostensibly involved V.R. having conversations with her peers regarding engaging in an inappropriate sexual relationship with Coirazza. The District Defendant's alleged "involvement" in the inappropriate conversations V.R. had with her peers, i.e., providing a location for these conversations to occur, does not absolve Plaintiff's claims against the District Defendant of the notice of claim requirement articulated in N.J.S.A. § 59:8-3. Specifically, this conduct, in and of itself, does not constitute the commission of sexual assault, another crime of a sexual nature, a prohibited sexual act as defined in N.J.S.A. § 2A:30B-2, or sexual abuse as defined in N.J.S.A. § 2A:61B-1.

In short, the District Defendant had no involvement in the alleged commission of the sexual abuse of V.R., as articulated in

N.J.S.A. § 59:8-3(b) and any alleged conduct which did occur within the District Defendant's supervision does not fall within the protections of N.J.S.A. § 59:8-3(b).   Accordingly, Plaintiff's claims are subject to the notice requirements referenced in this statute.   Plaintiff's failure to file a notice of claim prior to filing the instant action is therefore precludes her from proceeding with the instant action at this time.

**POINT IV**

**THE DISTRICT DID NOT COMMIT A TITLE IX VIOLATION AT ANY RELEVANT POINT**

Child abuse reporting statutes do not create private causes of action against the alleged offending party.   Zelnick v. Morristown-Beard Sch., 445 N.J. Super. 250, 263 (Law. Div. 2015). Plaintiffs seeking to sue for alleged reporting violations must find another cause of action under which to bring said claims. Gonzalez v. New Jersey, 2019 U.S. Dist. LEXIS 10689 at *7-8 (D.N.J. Jan. 23, 2019).   As Plaintiff is unable to bring a cause of action against the District for its alleged failure to report the sexual abuse committed by Coirazza, she has attempted to shoehorn a Title IX claim into the facts surrounding District's alleged failure to report.   Simply put, no Title IX claim exists here upon which the District may face any liability.

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied

the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The enforcement scheme for Title IX is crafted in such a way that any entity that receives federal financial assistance is required to promulgate the objectives of Title IX. There is no dispute that the District is an entity that receives federal financial assistance and is subject to the requirements of Title IX.

### I. The District Exercised No Control Over Nicolas Coirazza

The language of Title IX restricts the scope of prohibited conduct based on the funding recipient's degree of control over the harasser and the environment in which the harassment occurs. Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 644 (1999). Where the harasser is not an employee of the funding recipient, the recipient may not be liable for damages unless its "deliberate indifference 'subjects' its students to harassment." Ibid. "Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment." Ibid. A federal funding recipient's Title IX liability is limited "to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to 'expose' its students to

harassment or 'cause' them to undergo it 'under' the recipient's programs." Id. at 645.

In Davis, the infant plaintiff, a fifth-grade female student, was allegedly the victim of a sustained pattern of sexual harassment by a male classmate at an elementary school. Id. at 633. The alleged harassment persisted over the course of several months and, despite several complaints by the student to her teachers, no action was taken. Id. at 634. In determining that the defendant County Board of Education, a federal funding recipient, was indeed guilty of a Title IX violation, the Supreme Court of the United States stated the following:

> Where, as here, the misconduct occurs **during school hours and on school grounds** -- the bulk of [the perpetrator's] misconduct, in fact, took place in the classroom -- the misconduct is taking place "under" an "operation" of the funding recipient. In these circumstances, the recipient retains substantial control over the context in which the harassment occurs. More importantly, however, in this setting the Board exercises significant control over the harasser.

Davis, 526 U.S. at 646 (emphasis added) (internal citations omitted).

In the instant matter, the District did not retain **any** control over the context in which the alleged sexual abuse of V.R. was conducted. It cannot be reasonably disputed that the alleged perpetrator, Nicolas Coirazza, was not a student of the District at any relevant point hereto, and his actions or conduct were never subject to the supervision or control of the District. The alleged

sexual abuse of V.R., the scope of which is not known to the District, occurred after school hours and entirely off-District premises. As referenced above, Plaintiff may attempt to claim that V.R.'s receipt of explicit text messages or social media messages from Coirazza during school hours somehow connects her alleged abuse to the District's control and supervision. Such an argument must fail; any such communications did not occur through a District-issued electronic device, and the District cannot be expected to monitor the personal cell phones of its students.

Accordingly, the District committed no Title IX violation in connection with the alleged sexual abuse of V.R. by Coirazza.

## II.  V.R. Was Not Sexually Harassed by Her Friend Group in Violation of Title IX

Under Title IX, a federal funding recipient may be liable for subjecting its students to discrimination on the basis of sex where the victim is subject to sexual harassment "that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' education experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." Davis, 526 U.S. at 651.

The type of student-to-student sexual harassment leading to a Title IX claim has been the subject of voluminous litigation since the enactment of Title IX. Accordingly, there is no dispute as to the type of student-to-student sexual harassment that Title

IX covers.   It appears that Plaintiff's Amended Complaint is claiming that V.R. was the victim of student-to-student sexual harassment, perpetrated by members of her peer group who encouraged and facilitated her to take part in inappropriate sexual relationships, including the alleged sexual relationship that occurred with Coirazza.

The United States District Court for the District of New Jersey has found Title IX violations due to student-to-student harassment in circumstances where the harassment is truly shocking and depraved conduct.   See M.H. v. C.M., 2020 U.S. Dist. LEXIS 199534 at *3-4 (D.N.J. Oct. 27, 2020) (Title IX violation where the victim, who was mentally disabled, was subjected to daily sexual assault and bullying in the girls' bathroom, which only ended when the victim's parents began homeschooling her); see also Tafuto v. N.J. Inst. of Tech., 2012 U.S. Dist. LEXIS 52623 at *2-3 (D.N.J. Apr. 12, 2012) (Title IX violation where victim was subjected to frequent homosexual epithets both in the classroom and in an NJIT Facebook group).

Similarly, the United States District Court for the Middle District of Pennsylvania has only found Title IX violations for student-to-student harassment in the most extreme circumstances. See M.W. v. Shikellamy Sch. Dist., 2022 U.S. Dist. LEXIS 27319 at *1-2 (M.D. Pa. Feb. 15, 2022) (Title IX violation where a classmate pulled down the victim's pants and performed a sexual act on him

in front of the class); see also Doe v. Williamsport Area Sch. Dist., 2023 U.S. Dist. LEXIS 188445 at *2 (M.D. Pa. Oct. 19, 2023) (Title IX violation where, while sleeping in a hotel room during on an out-of-state baseball tournament, the victim was sexually assaulted in his sleep by several teammates, who recorded the video and sent it around the school, forcing the victim to transfer schools); see also S.M. v. Tamaqua Area Sch. Dist., 2023 U.S. Dist. LEXIS 35298 at *3 (M.D. Pa. Mar. 2, 2023) (Title IX violation where as a hazing ritual, the victim, a freshman on the high school football team, was twice subjected to older members of the team attempting to forcibly insert an object into the victim's anus).

Based upon the aforementioned caselaw, in order to create a cause of action under Title IX, the complained of conduct must be so severe, pervasive, and objectively offensive so as to interfere with the victim's right to equal access to the institution's resources and benefits.  In all of the circumstances referenced above, the victim was affected by the complained of conduct such that they were unable to continue attending school, or their ability to perform as a student was severely affected.

As to allegations of student-to-student sexual harassment, Plaintiff's Amended Complaint merely alleges that V.R. and her peers engaged in conversations of an inappropriate nature. Namely, there is no allegation that V.R. was bullied, harassed, assaulted, threatened, or intimidated by her peer group.  Nor are there any

allegations that any of these alleged sexual conversations were conducted against V.R.'s will.

Further, Plaintiff's Amended Complaint fails to allege that the alleged apparent harassment perpetrated by V.R.'s peer group somehow impacted V.R.'s access to the District's resources and benefits.  While Plaintiff's Amended Complaint does seem to allege that V.R.'s grades began to suffer as she became more intertwined with this peer group, it is not alleged that this was the result of any alleged sexual harassment of V.R., or any other factors that were within the District's control.  See "Exhibit G" ¶ 62. The District Defendant cannot be liable under Title IX for each student who falls in with a "bad crowd" and suffers an attendant drop in performance.

The allegations in Plaintiff's Amended Complaint as to the conduct of V.R.'s peer group does not rise to the level of creating a cause of action under Title IX.

### III.  The Alleged Sexual Harassment Perpetrated by V.R.'s Friend Group was not Unwelcome

It is fundamental to Title IX that the alleged conduct constituting sexual harassment must be unwelcome.  Lockhart v. Willingboro High Sch., 2017 U.S. Dist. LEXIS 161993 at *14 (D.N.J. Sep. 29, 2017) (citing to United States Dep't of Educ. Office of Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties

(Oct.2015), https://www2.ed.gov/about/offices/list/ocr/docs/sexh
ar01.html. (Harassment Guidance). An assessment of 'welcomeness'
"depends upon the age of the alleged victim." Ibid.

Plaintiff's Amended Complaint alleges that V.R. was part of
a peer group which encouraged "**one another** to take part in
inappropriate relationships." See "Exhibit G" at ⁋126 (emphasis
added). It is alleged that certain conversations among members of
this peer group occurred on school grounds. Id. at ⁋125. That
is the sum and substance of the alleged Title IX-violating conduct
that V.R. was subjected to by her peers. It is inherent in the
use of the phrasing "one another" in Plaintiff's Amended Complaint
that V.R. not only received encouragement from her peers to engage
in an inappropriate relationship with Coirazza, but also provided
encouragement to her peers to engage in similar inappropriate
relationships.

Notably absent from Plaintiff's allegations are any facts
indicating that V.R. was somehow forced, threatened, or otherwise
coerced into participating in this peer group or in conversations
concerning engaging in inappropriate relationships. To the
contrary, Plaintiff's Amended Complaint plainly indicates that
V.R. was actively involved in encouraging her peers to participate
in inappropriate relationships with older men. Clearly, the
alleged Title IX-violating conduct committed by V.R.'s peers was

not "unwelcome," as required to trigger Title IX liability; conversely, it was reciprocated by V.R.

While, at all times relevant hereto, V.R. was indeed a minor who was incapable of consenting to a sexual relationship with Coirazza, such an inability to consent does not extend to participating in a peer group or engaging in certain conversations with members of her peer group, regardless of the topic. Moreover, Plaintiff's Amended Complaint contains no allegations that she suffers from any cognitive deficits, learning disabilities, or communication impairments which may have affected her ability to rebuff the attempts of her peers to engage in inappropriate conversations with her or otherwise distance herself from the members of this "satanic cult."

It appears that, upon reaching high school age, V.R. began mixing with peers who she is claiming negatively influenced her. Apparently, one of the ways in which she was negatively influenced was a decline in her grades. However, a decline in V.R.'s grades due to Plaintiff's poor decision-making does not amount to the deprivation of her access to the educational opportunities or benefits provided by the District Defendant.

In conclusion, the allegations in Plaintiff's Amended Complaint do not create a cause of action under Title IX for sexual harassment.

**POINT V**

**Plaintiff is Barred from Bringing a CSAA Claim for any Conduct Occurring Before December 1, 2019**

The New Jersey Child Sexual Abuse Act, codified in N.J.S.A. 2A:61B-1, also known as the CSAA, was enacted in 1992 and created the first statutory cause of action for child sexual abuse in New Jersey. Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 85 (2006). The CSAA established two classes of abusers: "those persons who inflict the abuse (active abusers), and those who stand *in loco parentis* within the household who know of the abuse and who fail to protect the child (passive abusers)." Id. at 86. To prove that a person was a passive abuser under the CSAA's original definition, it was required to be shown that the alleged passive abuser was: "(1) a person (2) standing *in loco parentis* (3) within the household." Ibid.

The CSAA remained largely unchanged until it was amended effective December 1, 2019. Doe v. Small, 654 F. Supp. 3d 376, 401-02 (D.N.J. 2023). The amendment removed the phrase "within the household," from the CSAA. Ibid. New Jersey Courts interpreting the pre-amendment language of the CSAA had previously declined to hold a public day school, such as the District Defendant, to fall "within the household," as was then-required to create a CSAA violation. See J.P. v. Smith, 444 N.J. Super. 507, 524-25 (Super. Ct. App. Div. 2016)(holding that the term "within

the household" includes a degree of residential custody that is more than the fleeting and temporary custody that a public day school exercises over its pupils); compare with Hardwicke, 188 N.J. at 93-94 (holding that a boarding school that provides food, shelter, educational instruction, recreational activities, and emotional support to its full-time boarders constitutes a household within the CSAA's definition).

Public day schools, such as the District Defendant, were not considered households under the CSAA because:

> [It] comports with a reasonable reading of the text of the statute.  The CSAA was enacted to broaden the class of persons who could be potentially liable [for sexual abuse], but the insertion of "within the household" must be read as a limiting factor on passive liability.  The legislature could have omitted the phrase and extended potential liability to all persons who stood in loco parentis of the victim.  The legislature chose not to do so.  The legislature chose also to insert the definite article, "the household," which generally restricts the phrase's meaning to the household which cares for plaintiff, rather than, for instance, an institution or organization of which plaintiff is a member.

Bryson v. Diocese of Camden, N.J., 909 F. Supp. 2d 364, 370 (D.N.J. 2012) (internal citations omitted).

In Doe v. Small, plaintiff Jane Doe, on behalf of her minor son, brought an action against various defendants, including the Atlantic City Board of Education, alleging that an Atlantic City School District employee sexually abused the infant plaintiff between early 2016 and early 2019, prior to the CSAA's amendment. Doe, 654 F. Supp. at 384-86.  The Plaintiff's Amended Complaint

included various causes of action, including a CSAA violation, against the defendant Board of Education, and other school district employees who were named individually.  Id. at 402.

Among the individual defendants was the infant plaintiff's former elementary school principal, La'Quetta Small, who argued that the CSAA's December 1, 2019, amendment did not apply retroactively, so any abuse occurring prior to December 1, 2019, was still subject to the pre-amendment CSAA's "within the household" requirement.  Id. at 402.  The United States District Court for the District of New Jersey agreed with defendant Small, finding that the CSAA, amended on December 1, 2019, to remove the "within the household" requirement, applied only prospectively. Id. at 403.  The Court dismissed the plaintiff's CSAA claim against defendant Small and the District Defendant, as the infant plaintiff's relationship with the school did not include any aspect of residential custody, as required under the pre-amendment CSAA. Id. at 404-05.

Here, Plaintiff's Amended Complaint alleges she was the victim of sexual abuse that occurred, in part, prior to December 1, 2019.  See "Exhibit G" at ¶ 16.  Count VI of Plaintiff's Amended Complaint alleges that the District Defendant violated the CSAA. Id. at ¶¶ 146-159.  The Amended Complaint does not contain any language limiting the alleged CSAA violation based upon the Court's holding in Doe, discussed supra.  Instead, Plaintiff's Amended

Complaint utilizes the language referenced in the <u>Hardwicke</u> standard, discussed <u>supra</u>, for boarding schools. Specifically, paragraph 148 of Plaintiff's Amended Complaint claims that District Defendant provided "food, shelter throughout the day, educational instruction, recreational activities, and emotional support to its full-time students." <u>Id</u>. at ¶ 148.

Like the finding made by the Superior Court of New Jersey, Appellate Division, in <u>J.P.</u>, <u>supra</u>, the District Defendant's custody over Plaintiff while she was a student was fleeting and temporary in nature, such that it did not contain a residential component. It is undisputed that the District Defendant operates day schools, where students travel to the school buildings for the duration of the school day and return to their homes after the conclusion of the school day. Absent a residential component, Plaintiff cannot be considered to have been within the District Defendant's "household" at any point relevant hereto; the District Defendant did not operate a household.

The District Defendant cannot be held liable under the CSAA for any alleged abuse of Plaintiff that occurred prior to the CSAA's amendment on December 1, 2019. The District Defendant respectfully requests partial dismissal of Count VI of Plaintiff's Amended Complaint insofar as it alleges the District Defendant committed CSAA violations prior to December 1, 2019.

## <u>CONCLUSION</u>

For the foregoing reasons, the District Defendant respectfully requests dismissal of Plaintiff's Amended Complaint with prejudice due to its failure to state a claim upon which relief can be granted, and a partial dismissal of Count VI of Plaintiff's Amended Complaint pursuant to the New Jersey CSAA as it relates to all conduct that occurred prior to December 1, 2019.


Respectfully submitted,

**McGIVNEY, KLUGER, CLARK & INTOCCIA, P.C.**
*Attorney for Defendant, Cresskill Public Schools*


By: /s/ *Gary J. Intoccia*
    Gary J. Intoccia, Esq.
    (ID No. 021051991)


By: /s/ *Emily R. Weisslitz*
    Emily R. Weisslitz, Esq.
    (ID No. 023362007)


By: /s/ *Anthony S. Pellegrino*
    Anthony S. Pellegrino, Esq.
    (ID No. 407912022)